UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MAGDALENA CORONA,

    Plaintiff,

v.                                                              CASE NO. 8:19-cv-2483-T-23CPT

THE GOODYEAR TIRE
& RUBBER COMPANY, et al.,

    Defendants.
_____/

**ORDER**

    The plaintiffs' claims arise from a fatal automobile accident in which Jessica Guevara was driving a 2005 Jeep that overturned. Suing individually and in a representative capacity, Magdalena Corona alleges that design defects in the Jeep and the Jeep's spare tire caused the automobile accident. Corona sues FCA US LLC, the successor in interest of the original automobile manufacturer; Goodyear Tire & Rubber Company, the tire manufacturer; and William O'Connor, the used car dealer who sold the Jeep. Corona sues each defendant for negligence.

    Although both Goodyear's and FCA's citizenship differs from each plaintiff's, O'Connor shares Florida citizenship with at least one plaintiff. Asserting that the plaintiffs fraudulently joined O'Connor, Goodyear removes (Doc. 1) the action and alleges the existence of complete diversity notwithstanding O'Connor's Florida citizenship. FCA consents (Doc. 2) to removal because the action ostensibly "relates

to" a bankruptcy proceeding. O'Connor fails to timely consent to removal, and the plaintiffs move (Docs. 20, 24) to remand.

## DISCUSSION

To satisfy the requirements for removal jurisdiction, no defendant can share the same citizenship as any plaintiff. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Further, each defendant must consent to removal, and "no defendant can be a citizen of the state in which the action was brought." *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir.2001) (*citing* 28 U.S.C. § 1441(b)). However, in determining diversity of citizenship, the law disregards the citizenship of a fraudulently joined defendant. *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). Although not insurmountable, the defendant's burden to prove fraudulent joinder "is a heavy one." *Devore v. Howmedica Osteonics Corp.*, 658 F. Supp. 2d 1372, 1376 (M.D. Fla. 2009) (Corrigan, J.) (*quoting Pacheco de Perez v. AT&T*, 139 F.3d 1368, 1380 (11th Cir. 1998).

To establish the fraudulent joinder exception to the complete diversity requirement, the defendants must demonstrate by clear and convincing evidence that no possibility exists "that the plaintiff can prove a cause of action against [O'Connor,] the resident defendant." *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). As *Triggs* explains, "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and

remand the case to the state court." 154 F.3d 1284, 1287 (11th Cir. 1998) (*quoting Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983)).

*I. Patent vs. Latent Defect*

The plaintiffs allege that O'Connor negligently sold the Jeep because he "could have discovered through the exercise of reasonable care" the Jeep's defects and dangerous conditions. (Doc. 1-3 at 38) According to the plaintiffs, O'Connor "owed a duty . . . to replace the subject tire, or to warn of the defect and dangers that existed." (Doc. 1-3 at 38) Because O'Connor allegedly failed to fulfil his duty, the plaintiffs assert O'Connor's negligence in selling the Jeep.

Goodyear responds that O'Connor is improperly joined because a "seller of used goods is not responsible for discovering latent defects," such as a defective tire that appears undamaged on the surface. (Doc. 1 at 7) Thus, according to Goodyear, because the spare tire featured a latent defect only, no reasonable inspection could have detected the defect and O'Connor's conduct was prudent. In response, the plaintiffs argue that "the age of a tire can easily be ascertained by looking at the tire's DOT number," which appears on the tire's surface and denotes the tire's age. (Doc. 24 at 15) In other words, the plaintiffs characterize the tire's defect as "patent" and obvious — that is, a reasonable seller of used vehicles should know to inspect the readily ascertainable age of a spare tire and to respond properly.

The parties dispute an unsettled area of Florida law. Goodyear cites *Masker v. Smith*, 405 So. 2d 432 (Fla. 5th DCA 1981), to argue that a seller of used goods has no duty to inspect for latent defects. However, in *Masker*, the used car dealer could

- 3 -

discover no defect in the brake system "unless [the] brake system was torn apart." *Masker*, 405 So. 2d at 432. Therefore, *Masker* states, "we are not aware of any duty on such dealer to discover latent defects which by their very nature could not be discovered by a reasonable and customary inspection." 405 So. 2d 432, 433–44 (Fla. 5th DCA 1981). Explaining unawareness of a duty differs from affirmatively stating that no duty to inspect exists, and *Masker* is otherwise silent about (1) whether a used car dealer has a duty to inspect a spare tire's surface to ascertain the tire's age and (2) whether an older "DOT number" constitutes a latent or patent defect. *Masker*, 405 So. 2d at 433–34.

Neither Goodyear nor the plaintiffs identifies legal authority establishing whether a subject tire in the condition alleged by the plaintiffs bears a latent or patent defect. Because Florida law lacks direct treatment of the issue and because the plaintiffs allege the existence of a patent defect in the tire, Goodyear's argument fails to bar remand.[1]

---

[1] Also, Goodyear argues that the plaintiffs' assertion of the existence of a patent defect is inconsistent with Corona's allegation that FCA concealed the defect. This argument fails for two reasons. First, observing the tension between the plaintiffs' arguments is less than demonstrating that the plaintiff's claim is "impossible." *Triggs*, 154 F.3d at 1287 ("The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate."). Second, the manufacturer's concealment of a defect by failing to warn about tire aging is separate and distinct from a dealer's allegedly negligent failure to inspect for a patent defect. The former tolls the statute of repose; the latter constitutes a discrete action forborne by a dealer whose duty is allegedly irrelevant to the manufacturer's. And a products liability claim can arise from an inadequate warning from a seller of goods, such as O'Connor, at any rate. *Liggett Group*, 973 So. 2d at 475 (*citing Jennings v. BIC Corp.*, 181 F.3d 1250, 1255 (11th Cir. 1999)).

*II. The Statute of Repose*

Next, although the defendants argue that the statute of repose bars the plaintiffs' claim against O'Connor, the plaintiffs argue that the statute of repose applies to none of O'Connor's independent acts of negligence. Florida's statute of repose for a products liability claim provides:

> Under no circumstances may a claimant commence an action for products liability, including a wrongful death action or any other claim arising from personal injury or property damage caused by a product, to recover for harm allegedly caused by a product with an expected useful life of 10 years or less, if the harm was caused by exposure to or use of the product more than 12 years after delivery of the product to its first purchaser or lessee who was not engaged in the business of selling or leasing the product or of using the product as a component in the manufacture of another product.

Fla. Stat. § 95.031(2)(b). The twelve-year statute of repose for a products liability action includes a tolling provision "for any period during which the manufacturer . . . had actual knowledge that the product was defective in the manner alleged by the claimant and took affirmative steps to conceal the defect." Fla. Stat. § 95.031(2)(d). Goodyear argues that the plaintiffs "do[ ] not specifically allege actual knowledge of a defect by the manufacturer of the subject vehicle." (Doc. 12 at 7)  However, in seven pages of the complaint, the plaintiffs allege that each corporate defendant "had actual knowledge" of the concealed defects. (Doc. 1-3 at 24)  Tolling the statute of repose remains available and, consequently, the plaintiffs can "possibly" assert a timely claim against O'Connor. *Jones v. Honeywell Int'l, Inc.*, 385 F. Supp. 2d 1268, 1271 (M.D. Fla. 2005).

Also, the plaintiffs allege that O'Connor was negligent in failing to inspect the vehicle before sale. If O'Connor owed a duty under Florida law to reasonably inspect the vehicle before the sale and he failed to execute this duty, the plaintiffs' negligence claim against O'Connor "is an arguable one under state law" — apart from any potential products liability claim. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *see Wallace v. Dean*, 3 So. 3d 1035, 1047 (Fla. 2009) (discussing the various bases on which a duty arises); *Brown v. Glade & Grove Supply, Inc.*, 647 So. 2d 1033, 1037 (Fla. 4th DCA 1994) (finding that the seller of a tractor might be prospectively liable for negligently failing to inspect the subject tractor). Because Corona alleges a colorable claim against O'Connor, a non-diverse party, Goodyear fails to satisfy the "heavy" burden to sustain a claim for fraudulent joinder. *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). And because the plaintiffs allege that the defendants fraudulently concealed the tire's defects, tolling the statue of repose might render the plaintiffs' claim against O'Connor timely.[2] *See Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1333 (11th Cir. 2011) (explaining that remand is proper if the complaint possesses a mere possibility of stating a cause of action). The statute of repose fails to preclude remand.

---

[2] Also, FCA argues that "FCA US was not the manufacturer of the subject vehicle." (Doc. 12 at 7) However, FCA's potential liability lacks pertinence to whether the plaintiffs "possibly" assert a claim against O'Connor.

*III. Relatedness to the Chrysler Bankruptcy Proceeding*

Finally, FCA argues that the plaintiffs' claim against FCA relates to a chapter 11 bankruptcy. A brief tracing of the Chrysler bankruptcy clarifies this putative relation. More than ten years ago, Old Chrysler sought chapter 11 bankruptcy protection. FCA purchased almost all of Old Chrysler's assets in accord with a "Master Transaction Agreement" (MTA), which the bankruptcy judge confirmed in an order. (Doc. 31 at 2) However, FCA agreed to acquire limited liabilities only (designated "assumed liabilities" in the MTA). Thus, according to FCA, the MTA contemplates that FCA forbears assuming certain liabilities, such as the claim alleged in this action. (Doc. 31 at 4–5) FCA argues that because the claim requires interpretation of the MTA and sale order and because the claim might affect the bankruptcy estate of Old Chrysler, the claim "relates to" or "arises in" Old Chrysler's bankruptcy proceedings. (Doc. 31 at 11)

Under 28 U.S.C. § 1334(b), a district court exercises "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." A civil proceeding "relates to" a bankruptcy proceeding if "the outcome of [the civil] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990) (*quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). More narrowly, "[t]he 'arising in a case under' category is generally thought to involve administrative-type matters . . . or . . . 'matters that could arise

only in bankruptcy.'" *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir. 1999) (*quoting Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).

But even if a district court determines a civil action "arises in" or "relates to" a case filed under title 11, the court retains discretion to abstain and remand. 28 U.S.C. § 1334(c)(1) ("[N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.").

Although the plaintiffs' claim against FCA might bear some tangential connection to a title 11 action, the balance of this action does not.  First, the Old Chrysler bankruptcy closed four years ago.  FCA argues that "it is immaterial that the bankruptcy estate was closed when plaintiffs filed their complaint." (Doc. 31 at 16)  However, "jurisdiction under section 1334(b) is more limited after the bankruptcy plan has been confirmed." *Keefe, Anchors & Gordon PA v. ASI Holding Co., Inc.*, 598 B.R. 20, 23 (N.D. Fla. 2018) (*citing In re Resorts Int'l, Inc.*, 372 F.3d 154, 164–65, 168 (3d Cir. 2004)); *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005).  At the very least, the closing of the bankruptcy gravitates against exercising jurisdiction in this instance.

The bankruptcy judge retains jurisdiction to "interpret, implement, and enforce" the sale order, but this dispute neither involves identification of the debtor's property nor affects another creditor. *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 789 (11th Cir. 1990).  And the instant action could meaningfully alter neither the

administration of the debtor's estate nor the "debtor's rights, liabilities, options or freedom of action." *In re Murray Indus., Inc.*, 204 B.R. 74, 77 (Bankr. M.D. Fla. 1995). Thus, FCA fails to establish that this action, initiated well after the end of the bankruptcy, "could conceivably have any effect on the estate being administered in bankruptcy." *Washington v. LVNV Funding, LLC*, 2015 WL 1245741, at *3 (N.D. Ala. 2015) ("The claims in that case arose after the debtor's bankruptcy was discharged, and not during the pendency of the bankruptcy proceedings; therefore, the claims could not 'conceivably have an effect on the estate being administered in bankruptcy.'"). Therefore, federal jurisdiction is unwarranted in this action. The administration plan commends this result, the bankruptcy judge's order confirms this result, and the Eleventh Circuit commands this result.

Second, FCA argues that this controversy requires interpretation of the MTA and bankruptcy orders. However, the interpretation of an order or a confirmed agreement is insufficient alone to establish the requisite "relation" for federal jurisdiction to attach, especially if the action is "too remote from the bankruptcy case." *In re Murray Indus., Inc.*, 204 B.R. 74, 77 (Bankr. M.D. Fla. 1995). Under FCA's theory, "the parties can write their own jurisdictional ticket," *In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004), and difficulty arises in imagining an action involving FCA but not invoking federal jurisdiction. Further, the bankruptcy judge's retaining jurisdiction for a limited circumstance fails to establish jurisdiction in this instance. As *Keefe* aptly explains, "to the extent Defendants are attempting to argue that the retention of jurisdiction provisions in the Consensual Joint Plan operate as

an independent basis for jurisdiction, their argument is without merit." 598 B.R. at 26–27.[3]

Third, the plaintiffs sue each defendant for negligence, a claim that rests exclusively within the ambit of state law. *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 789 (11th Cir. 1990) ("[T]his dispute is about . . . a question of state law. Such disputes should be decided by a state court; state law supplies the rule of decision."). Therefore, even if this action were to sufficiently "relate to" the Chrysler bankruptcy proceedings, discretionary abstention encourages remand because this action involves matters of unestablished state law and, consequently, is "in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1)–(2). Whatever the merits and pertinence of the non-binding authority to which FCA cites,[4] the presumption favoring remand, the need to construe an allegation in the light most favorable to the plaintiffs, the settled administration of the bankruptcy

---

[3] FCA relies on *Dearden v. FCA USA LLC*, 2017 WL 1190980 (E.D. Pa. 2017), to assert this action's relatedness to the Old Chrysler bankruptcy proceedings because this action "requires interpretation of the sale order." However, *Dearden* involves a motion to sever and transfer claims against FCA. Reasoning that transferring the entire action might prejudice the other defendants, *Dearden* severed and transferred the claims against FCA to a then-pending bankruptcy. In this instance, FCA attempts to dismiss the entire action. Thus, unlike in *Dearden*, resolution of FCA's motion affects the plaintiffs' claims against the other defendants as well. Also, the administration plan received approval four years ago, and the plaintiffs' claims bear an attenuated connection to the bankruptcy proceedings, if any.

[4] Also noteworthy is FCA's improper invocation of legal authority. For example, FCA asserts that "Courts in the Eleventh Circuit apply a but-for analysis to determine whether a case 'arises in' proceedings under title 11: proceedings that 'arise in' bankruptcy are cases those that 'would have no existence outside the bankruptcy.'" (Doc. 31 at 7) (*citing In re Trujillo*, 485 B.R. 797, 802 (M.D. Fla. 2013). However, the precedent cited by FCA fails to support FCA's proposition of a "but-for analysis," and FCA no other authority supports the proposition. In fact, "there is no 'but for' test for arising in jurisdiction; that is, the fact that a matter would not have arisen had there not been a bankruptcy case does not *ipso facto* mean that the proceeding qualifies as an 'arising in' proceeding." 1 Collier on Bankruptcy P 3.01 (16th 2020).

estate, this action's negligible effect on the administration of the estate, and the complaint's inclusion of only state-law claims — considered separately and together — commend remand.

## CONCLUSION

This action belongs in state court. The plaintiffs' motion to remand (Doc. 23) is **GRANTED**, and this action is **REMANDED**. The defendants' motions to dismiss (Docs. 10, 12, 28) are **DENIED-AS-MOOT**. The clerk is directed to terminate each pending motion and to close the case.

ORDERED in Tampa, Florida, on August 25, 2020.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE